***********
The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing as:
 STIPULATIONS
1. The Industrial Commission had jurisdiction over the subject matter of this case, the parties were properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Zenith Insurance Company was the carrier on the risk until December 31, 2001. North Carolina Forestry Mutual Insurance Company was the carrier on the risk from January 1, 2002 to the present.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issues for determination are:
a. Whether the plaintiff has contracted a compensable occupational disease on July 31, 2001, and if so, to what benefits may she be entitled under the Act?
b. If plaintiff's claim is compensable, which carrier was on the risk during her period of last injurious exposure?
5. The parties stipulated the following exhibits into the record:
a. Stipulated Exhibit 1 I.C. Forms 19, 22, 33, 33R (two forms), and 61 (two forms),
b. Medical Records of Family Medicine Associates, eight pages,
c. Neuro Conduction Velocity Study, nine pages, and
d. Medical Records of Carolina Orthopaedic Specialists, ten pages.
 *********** RULINGS ON EVIDENTIARY MATTERS
Defendants' Motion to Amend the Record is GRANTED and Deputy Commissioner Dollar's questionnaires to the physicians in this case are to be included in the transcript of evidence.
 ***********
Based on all of the evidence of record and any reasonable inferences drawn therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a fifty-three year old right-hand dominant female. On December 31, 1985, she began working for the defendant-employer, a manufacturer of chair and sofa frames for the furniture industry.
2. On July 31, 2001, plaintiff was assigned to work as a lead person. Her duties included working on the clamp, using a pump sander, building frames, using frame guns, pneumatic screwdrivers and nail guns to assemble chairs and sofas.
3. Plaintiff began to notice right hand problems in about February or March of 2001, after the employer laid off workers. Her right hand problems became worse because she was required to do more work on the line, after her area was down to three workers; and she began to do most of the frame gun and clamp work. Generally, plaintiff had to do sixteen nails for each frame back, four for each frame front. She did 100 frames per shift. To operate the frame gun, she squeezed and pushed to get the burr in the frame, she grasped, flexed and twisted her right hand to use the nail and frame guns. In addition, she used a screwdriver to apply five screws per block. Plaintiff generally worked thirty-six to forty hours per week from March of 2001 through July 31, 2001.
4. On July 31, 2001, plaintiff reported problems with her right hand and thumb going numb. She asked her supervisor whether she should see her family doctor or the company doctor, and was instructed to get treatment from her family doctor.
5. On July 31, 2001, plaintiff went to Family Medicine Associates for her symptoms of pain and numbness in her right hand and wrist, which had become progressively worse over the past three to four months. She related a history of building frames and doing more physical labor over the past several months due to layoffs. After examination, Dr. Jill DeVries diagnosed plaintiff with right carpal tunnel syndrome and DeQuervain's tenosynovitis. She recommended a wrist splint and Vioxx. Plaintiff returned to Dr. DeVries on August 14, 2001 for a follow-up appointment. On examination, plaintiff had no weakness in grip strength or wrist flexion or extension, but did have significant discomfort with severe flexion of the right thumb and with extension/abduction. Additional medication was provided to plaintiff.
6. On September 6, 2001, plaintiff returned to Family Medical Associates with complaints of numbness and pain in the first and second fingers of the palmar aspect of her right hand. Tonya Milsaps, PA-C, treated plaintiff, during which the carpal tunnel was injected with lidocaine and DepoMedrol. Ms. Milsaps recommended that plaintiff use a regular splint during the day and a cock-up splint at night. At a recheck on September 21, 2001, plaintiff complained of pain, swelling and discomfort with range of motion over the dorsal aspect of the left thumb for about two weeks. She reported her work aggravated this condition.
7. Between September of 2001 and March of 2002, plaintiff continued to use sanders, nail guns, screwdrivers and frame guns to do her work on the line. Throughout 2002, plaintiff worked nine hours per day, which is greater than the number of hours she worked in 2001. With these extra hours, plaintiff's right arm symptoms grew progressively worse.
8. By March 13, 2002, Tonya Milsaps referred plaintiff to Board Certified Orthopaedic Surgeon Dr. Stephen Sladicka for further evaluation. Plaintiff reported numbness and pain in her fingers and the right forearm, wrist and palmar aspect of the right hand for several weeks.
9. On May 24, 2002, Dr. Steven Merrill at Family Medical Associates examined plaintiff and ordered continued use of Daypro and the cock-up splint and a nerve conduction study.
10. On June 4, 2002, plaintiff underwent nerve conduction studies at Catawba Memorial Hospital which were reported as normal, without evidence of compression neuropathy.
11. On June 26, 2002, Orthopedist Dr. Stephen Sladicka examined plaintiff for right hand pain. She related a history of night pain, altered sensation on the radial three and a half digits. X-rays revealed early cystic changes of the base of the thumb consistent with early CMC arthritis. Dr. Sladicka diagnosed plaintiff with carpal tunnel syndrome and basal joint arthritis in the right thumb.
12. On July 19, 2002, plaintiff returned to Dr. Sladicka with complaints of her right thumb and hand. Dr. Sladicka injected the CMC joint and advised that her only possible recourse was to undergo surgery for the right thumb. By August of 2002, plaintiff had a decrease in right hand grip strength.
13. Plaintiff told Dr. Sladicka that if she got a day or so off the clamp job, she would get some relief from her right hand symptoms, but as soon as she returned to work, her symptoms would become worse. Dr. Sladicka noted plaintiff reported pain with activities and increasing at work, and activities worsens her pain.
14. On October 22, 2002, Dr. Sladicka performed a right carpal tunnel release, right thumb ligament reconstruction, tendon interposition, and right thumb flexor carpi radialis tendon harvest.
15. Dr. Sladicka authorized plaintiff to return to work on January 22, 2003 on light duty status with no lifting, no repetitive use of the right hand and no using frame guns.
16. Plaintiff received short-term disability through an employee-funded plan while she was out of work.
17. Since plaintiff's return to work on January 22, 2003, the defendant-employer had provided work suitable to plaintiff's restrictions and her right hand symptoms had improved.
18. The competent medical evidence in the record supports a finding that plaintiff's occupational disease was characteristic of or peculiar to her job, was not an ordinary disease of life to which the public is equally exposed outside the employment, and was causally related to her employment.
19. The competent medical evidence in the record supports a finding that plaintiff's job duties in 2002 augmented her occupational disease symptoms, thus necessitating further treatment.
20. At the time of the hearing before the Deputy Commissioner, plaintiff had not reached maximum medical improvement nor had she been rated for any permanent partial impairment as a result of her occupational disease.
21. Plaintiff would benefit from future treatment, as may be ordered by Dr. Sladicka.
22. Based upon the Form 22 Wage Chart, plaintiff's average weekly wage was $380.00 which yields a compensation rate of $253.35.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). In the instant case, plaintiff has carried the burden of proof to establish she contracted a compensable occupational disease.
2. Plaintiff's occupational disease was augmented during her employment with defendant-employer in 2002. North Carolina Forestry Mutual Insurance Company was the carrier on the risk in 2002, when plaintiff was last injuriously exposed. N.C. Gen. Stat. § 97-57. They are, thus, liable for any benefits owed to plaintiff.
3. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $253.35 per week for the period from October 22, 2002 through January 21, 2003. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendant-North Carolina Forestry Mutual Insurance Company pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
6. Defendants appealed the Deputy Commissioner's Opinion and Award and the Full Commission affirmed said opinion with compensation being paid to the plaintiff. In the discretion of the Full Commission, counsel for the plaintiff is entitled to have defendants pay an attorney's fee in the amount of $500.00 which is in addition to the amount awarded as a percentage of the plaintiff's compensation. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-North Carolina Forestry Mutual Insurance Company shall pay temporary total disability compensation to plaintiff at the rate of $253.35 per week for the period from October 22, 2002 through January 21, 2003. Said compensation has accrued and shall be paid in a lump sum.
2. Defendant-North Carolina Forestry Mutual Insurance Company shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
3. As plaintiff had not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
4. Defendant-North Carolina Forestry Mutual Insurance Company shall pay the costs, including the expert witness fees of $400.00 to Dr. Stephen Sladicka and $160.00 to Tonya Milsaps, PA-C.A
5. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded to plaintiff under paragraph one of this award is hereby approved to be deducted from the lump sum due plaintiff and shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
6. Defendants shall pay to counsel for the plaintiff an attorney's fee in the amount of $500.00 for defending this matter on appeal to the Full Commission. This fee is to be paid in addition to the fees awarded as a percentage of the plaintiff's compensation.
This the 23rd day of January, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER